IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

KASSAN  KHALID MORGAN,       )
TDCJ No. 1306656,            )
Plaintiff,                     )
                             )     Civil No. 7:09-CV-167-O
v.                         )
                             )
RICHARD BARNETT, JR., *et al.*,   )
Defendants.                )

## REPORT AND RECOMMENDATION

By Order of Reference (Docket No. 67) Plaintiff's Motion for Order Compelling Discovery (Docket No. 64) and Defendants' Motion for Protective Order (Docket No. 65) were referred to the undersigned for hearing, if necessary, and determination. Recognizing that by their Motion for Protective Order, as well as by their answers, each of the Defendants had claimed qualified immunity from suit as well as for indemnification and further recognizing that such immunity from suit applies with equal force to protect a defendant from the burdens of discovery procedures, I *sua sponte* entered an order (Docket No. 73) directing that the Plaintiff file a Rule 7(a) response to the Defendants' qualified immunity pleas.[1] By that order further discovery proceedings were stayed, except for discovery on the qualified immunity issue.[2] The plaintiff has timely filed a pleading styled "Plaintiff's *Amended* Reply to Defendants Qualified Immunity Defense." (Docket No. 84) (emphasis supplied). In addition Plaintiff has filed a pleading styled "Amended Complaint."(Docket No. 80). While the filing deadline for pleadings has long since expired and the Amended Complaint was filed without leave of court, I deem the "Amended Complaint" to be a supplement to, rather

---

[1]     In accord with *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995).

[2]     As permitted under *Geter v. Fortenberry*, 849 F. 2d 1550, 1554 (5th Cir. 1988).

than a pleading in lieu of, Plaintiff's original complaint and have considered it as such.  Similarly, I deem the "Amended Reply" to be an original reply tendered by Plaintiff in compliance with this Court's Rule 7(a) reply order and have considered it as such. Newly-joined Defendants Anthony Brias, Justin Roy, and Lisa James have filed their Answer (Docket No. 86) raising qualified immunity and exhaustion defenses.

## General Statement of the Case

Plaintiff Kassan Morgan ("Morgan") is an inmate confined in the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID").  Proceeding *pro se* and *in forma pauperis*, Morgan brought this lawsuit pursuant to 42 U.S.C. §1983, claiming that 12 Defendants[3] violated his Eighth Amendment rights by using excessive force against him and subsequently demonstrating deliberate indifference to his serious medical needs.  Five of the Defendants named in Morgan's Original Complaint have been dismissed previously on qualified immunity grounds.[4] As to the remaining six named Defendants and the three newly-joined Defendants, Morgan sues Defendant Barnett for allegedly harassing him, encouraging him to hang himself and using two cans of pepper spray on him. He further alleges that as he was unconscious from hanging himself Defendant Barnett beat him and as he regained consciousness Barnett kicked him in the face. Morgan alleges that he suffered a black eye, a bloodied nose, a busted lip and two loose teeth. Morgan sues numerous other officers for their failure to protect him from the beating from Barnett. Morgan sues numerous defendants for their deliberate indifference to his medical needs and for their failure to schedule him for medical treatment and for falsifying medical documents. Finally, he ascribes to some of the officers attempts to engage in a "cover up."

---

[3]     Morgan's Complaint identified ten (10) defendants by name and one was unnamed and one identified as Dr._____Lewis.

[4]     Defendants Eddie Williams, Nathaniel Quarterman, Candace Tucker, Katheryn O'Donnell, and David Potter, Order on motion to dismiss, Docket No. 37.

<u>Early Consideration of Qualified Immunity Defense</u>

In prisoner civil rights cases under 42 U.S.C. §1983 the courts have been encouraged to consider qualified immunity defenses "at the earliest stage" so that defendants may avoid the burdens of discovery. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). In *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) the Supreme Court again stressed the desirability of not subjecting defendant officials to discovery, stating that "even such pretrial matters as discovery are to be avoided if possible" and that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." The Supreme Court in *Crawford-El v. Britton*, 523 U.S. 574, 594 (1998) reiterated that officials should not be subjected to unnecessary and burdensome discovery and that before allowing discovery the district court should determine whether, assuming the truth of plaintiff's allegations, the official's conduct violated clearly established federal law.  While the majority of qualified immunity issues are presented and considered on motions to dismiss under Rule 12(b)(5), as it was previously in this case,[5] the issue has now been raised by the Defendants in their Motion for Protective Order.  Whether raised by motion to dismiss or by other motion, I conclude that the same pleading and determination standards and precedents apply.

<u>Pleading Standard</u>

As the District Court in this case previously observed: "In a cause of action under § 1983, it is necessary to specify the personal involvement of each defendant. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.1983). A plaintiff cannot make generalized allegations. *Howard v. Fortenberry*, 723 F.2d 1206, 1209 (5th Cir.), vacated in part on denial of rehearing, 728 F.2d 712 (5th Cir. 1984). There must be an affirmative link between the deprivation and some act by the defendant. *Rizzo v. Goode*, 423 U.S. 362, 375-77 (1976). Conclusory allegations are insufficient to

---

[5]     See the Order on Motion to Dismiss, Docket No. 37.

state a cognizable claim under the Civil Rights Act. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993) (holding that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); *Van Cleave v. United States*, 854 F.2d 82, 84 (5th Cir. 1988) (requiring specific facts and noting that conclusory allegation are insufficient to maintain a claim under § 1983). Morgan's subjective belief that these Defendants violated his civil rights, without more, is insufficient to maintain an action against them. To the extent that Morgan seeks redress against these Defendants because of their supervisory positions, he cannot prevail. These Defendants cannot be held responsible for the alleged acts or omissions of their subordinates because here is no *respondeat superior* or vicarious liability in the context of a § 1983 claim. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)."

In the case of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court clarified the pleading standard for claims subject to qualified immunity. There the Court said that whether the complaint alleges a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." A court must determine 1. whether the factual allegations in the complaint state a plausible claim; and 2. in making this determination, consider whether there is a more plausible explanation for the defendant's conduct than the one affected by the plaintiff. Plaintiffs must rest their complaints on more than conclusions alone and must plead their case with precision and factual specificity. *Nunez v. Simms,* 341 F. 3d 385 (5th Cir. 2003). At this pleading stage, the Court in making these determinations must assume that **specific facts** alleged by the plaintiff are true unless they are disproved as a matter of law.

<u>Alleged Constitutional Violations</u>

Morgan's extensive pleadings serve up a virtual smorgasbord of potential constitutional violations. The first course is the claim of use of excessive force by a guard on an inmate in the

prison context. Morgan complains of three elements of excessive force he claims was used on him. First, Morgan alleges that Sergeant Barnett unnecessarily sprayed him with two cans of pepper spray. Second,  he claims that while he was unconscious (or semi-conscious) Barnett beat him. Third, he claims that when he started to regain consciousness,  Barnett kicked him in the face while he was on the floor. The second course served up by Morgan was against correction officers (other than Barnett) who he claims either actively participated in the use of excessive force by Barnett or intentionally failed or refused to prevent his use of excessive force. The next course is Morgan's claim that prison medical staff (officials other than Barnett) denied him proper medical care both before and after the alleged assault. Next, Morgan claims that the conditions of his confinement in a suicide prevention cell after his attempt to hang himself were cruel and unusual.  In that regard, he complains that the suicide cell was cold, that he was placed there naked, that he was not furnished a towel or cloth to clean pepper spray off his body, and that he was not timely furnished any clothing except what he made from a paper sack.   Next, Morgan complains about the mocking or taunting he received from some officers prior to his suicide attempt and mockery or taunts he received while confined naked or semi-naked in the suicide prevention cell(s) following his hanging attempt. Finally, Morgan throws onto the table a claim that some officers conspired to "cover-up" the incident.

<u>Morgans' Allegations as to each Defendant</u>

In the context of these legal parameters, the Court has reviewed the particular allegations of Morgan against each of the individual Defendants. Having examined and considered each and every of Morgan's pleadings in this case, inclusive of his Original Complaint, the "Amended Complaint," and the Rule 7(a) Reply,  I find that Morgan has made the following **precise**, **factual**, **non-conclusory** allegations as to the Defendants as reflected on the Addendum attached hereto.

5

Due to the extensive number of these often repetitive allegations, I am incorporating them by reference rather than recite them herein.

Prison Condition Standards

The Eighth Amendment prohibits cruel and unusual punishments. This has been interpreted by the Supreme Court to mean physically barbarous punishments. Such punishments are those which involve "the wanton and unnecessary infliction of pain," or those which are grossly disproportionate to the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). On the other hand, the Constitution does not mandate comfortable prisons. *Rhodes*, 452 U.S. at 349. If conditions for prisoners are "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." See *Rhodes*, 452 U.S. at 347. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). In determining whether a deprivation meets this constitutional threshold, the Court looks, in part, to the nature, amount and duration of the deprivation.

Deprivation of Clothing and Cold Temperature

To the extent that Morgan complains of the deprivation of clothing and wash materials in the suicide prevention cell, the Seventh Circuit Court of Appeals has held that such deprivations do not rise to the level of a constitutional violation. *Adams v. Pate*, 445 F.2d 105, 108-09 (7th Cir.1971). Similarly, in *Myers v. County of Lake*, 30 F.3d 847, 850 (7th Cir. 1994) the Seventh Circuit Court of Appeals held that conditions that create "temporary inconveniences and discomforts are insufficient to state an Eighth Amendment claim." That court went on to hold that because drastic measures may be necessary to prevent an inmate from committing suicide, inmates under suicide watch maybe deprived not only of belts and ties, but also of pens, sheets, blankets, even clothing, for almost any object may be used to harm oneself. Of accord is *Reynolds v. Mattson*, 2008 U.S. Dist. LEXIS 52326 (E.D. Mich. 2008) holding that plaintiff's allegations that in the suicide

observation cell he was stripped of everything except a mattress and he was not allowed sheets, blankets, pillows, pillow cases, towels, or even clothing except his underware and a suicide prevention gown did not state an Eighth Amendment claim.

Since Morgan had already used some element of his clothing or other cloth to make the noose in his suicide attempt, the withholding of clothing or other cloth items from the cell where Morgan was to be held for protection from himself and for observation was appropriate. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978). Although Morgan is clearly unhappy with the deprivation of clothing and the deprivation of cleaning facilities or materials, these deprivations do not implicate an unnecessary and wanton infliction of pain. Although Morgan makes much of his discomfort from the temperature in the suicide cell and his nakedness, there is no allegation that the temperature was artificially kept below the ambient temperature in the rest of the prison building or that he was exposed to freezing conditions that might have deprived him of life's necessities. In *Dvorak v. Racine County Sheriff*, 2007 U. S. Dist. LEXIS 29892 (E.D. Wisc. 2007), the District Court held that since the plaintiff failed to allege that the broken window in his suicide cell exposed him to freezing conditions, his claim that his suicide prevention cell had a broken window did not rise to the level of a constitutional violation.

Nor was Morgan's discomfort from the temperature in the cell and his nakedness grossly disproportionate to the necessary actions and conditions imposed by the officers for the prevention of further suicide attempts by Morgan. Nor was the duration (three days and two nights) of that discomfort unreasonable considering the gravity of Morgan's suicide intentions and attempt. It is reasonable that conditions to prevent self-harm can continue as long as the threat of suicide is present. *McMahon*, supra at 174.

<u>Mockery or Taunting</u>

To the extent that Morgan complains about mockery or taunting prior to his suicide attempt

or during the period of his confinement in the suicide prevention cell(s), he cannot establish a constitutional violation. Threats, verbal taunts, insults and even racial slurs, which may be viewed as offensive, do not give rise to liability under the Civil Rights Act. *Bender v. Brumley,* 1 F.3d 271, 274 n.4 (5th Cir. 1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action.); *United States v. Bigham* , 812 F.2d 943, 949 (5th Cir. 1987) (holding that technical batteries, angry words or passing thumps do not rise to the level of constitutional abuses). As a practical matter, the exchange of verbal insults between prisoners and corrections officers is an every day occurrence. *Somers v. Thurman* , 109 F.3d 614, 622 (9th Cir. 1997).  Courts that have considered such claims have uniformly held that they do not provide grounds for an action under 42 U.S.C. § 1983. *E.g.*, *Siglar v. Hightower, 112 F.3d 191(5th Cir. 1997); Somers v. Thurman* , 109 F.3d 614, 623-24 (9th Cir. 1997); *Purcell v. Coughlin* , 790 F.2d 263, 265 (2d Cir. 1986); *Collins v. Cundy* , 603 F.2d 825, 827 (10th Cir. 1979); *Shabazz v. Cole* , 69 F.Supp.2d 177, 201 (D. Mass. 1999); *Brown v. Croce* , 967 F. Supp. 101, 104 (S.D.N.Y. 1997). Assuming the truth of Morgan's allegations of mockeries and taunts, such conduct does not rise to the level of a civil rights violation.

<u>Adequate Medical Care</u>

Though complaining throughout his voluminous pleadings of failures by the staff and named individuals to provide him adequate medical care both **before and after** the alleged assault by Officer Barnett, Morgan does not identify what medical care, procedure or treatment he should have received that he did not.  As to the earlier time period, he complains that staff members knew he was on a hunger strike to gain attention of the staff to some perceived but unspecified harassment by some correctional officers but fails to identify what medical remedy, treatment or procedure the medical staff should have performed but did not.  Even mere negligence of medical providers is insufficient to sustain a 1983 claim.  Morgan's allegations of "knowing, intentional, and indifferent"  conduct

8

or lack of conduct by these defendants in the pre-assault time period are wholly conclusory and non-specific.

As to the provision of medical care *after* the alleged assault, Morgan does not identify what medical care, procedure, or treatment he received that was inadequate or that he should have received but did not, other than his claim that the medical staff did not clean off the blood from his face or give him materials to clean off the residue of the pepper spray from his body while he was in the suicide prevention cell. He has not pled or shown that the absence of these procedures resulted in cognizable injury or damage beyond his mere temporary discomfort. Thus his claims of lack of adequate medical care after the alleged assault are wholly conclusory and do not support a plausible cause of action.

### Cover-up Conspiracy

In *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir.1982) the Fifth Circuit held that to establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act. *Hunter v. City of Monroe,* 128 Fed. Appx. 374, 385 (5th Cir. 2005*); Hey v. Irving,* 161 F. 3d 7, 8 (5th Cir. 1998); *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir.1979). More than a blanket accusation is necessary to support a §1983 claim. *Aldabe v. Aldabe*, 616 F.2d at 1092; *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir.1977). *See also Cole v. Gray*, 638 F.2d 804, 811 (5th Cir.), *cert. denied*, 454 U.S. 838, 102 S. Ct. 144, 70 L. Ed.2d 120 (1981); *Newbold v. United States Postal Service*, 614 F.2d 46, 47 (5th Cir.) (per curiam), *cert. denied*, 449 U.S. 878, 101 S. Ct. 225, 66 L. Ed.2d 101 (1980).

In his Original Complaint, Morgan made no allegations whatsoever about any attempted "cover-up." It was only after the Defendants had made available to him in discovery the "Use of Force" video tape and the Defendants' own Use of Force Reports that Morgan resorted to allegations of "cover-up." For the first time in his Amended Complaint and Rule 7(a) Reply, Morgan asserts as

to various of the Defendants their involvement in a "systematic/institutional cover-up."[6]  He seizes upon two alleged occurrences to posit that a "cover-up" was initiated.  First, after he was removed from the cell and being transported by gurney to the medical building, he "could hear the guards whispering to one another about what story they were going to claim happened to 'cover-up' what did actually *occured*." He also alleges that he "could hear the camera person being called back away from me so to *recieve* 'cover-up instructions' with the group, then afterward was ordered to return." Secondly, after he is wheeled into the medical building, he alleges that nurse Maston participated in the "cover-up" by not initially verbalizing that he had blood on his body from his injured nose.  These conspiracy allegations are wholly conclusory and non-specific since they fail to identify how the persons were connected and fail to identify the object of the conspiracy.  L.V.N. Maston was not alleged to have been present at Morgan's cell and only encountered him at the medical building after he was wheeled there on the gurney. Morgan wholly fails to specify how her failure, if any, to verbalize the presence of blood on Morgan's body constituted part of any "systematic/institutional cover-up" when it is clear that he alleges that she did so verbalize after instruction from another female. To the extent Morgan seeks to assert a constitutional violation arising from any "cover-up" conspiracy, his claim fails.

<u>Excessive Force Claims</u>.

The final issue for the Court to address is the issue arising from the use of force to interrupt Morgan's suicide attempt (real or feigned) and to subdue him. While the use of some physical force may be necessary from time to time to subdue a recalcitrant inmate, the unexplained acts of beating an unconscious inmate or kicking an inmate in the face after he has been subdued following a suicide attempt (real or  feigned) would constitute excessive force in most contexts and, as such, could violate the Eight Amendment prohibition against cruel and unusual punishment of offenders.

---

[6]      Amended Complaint, p.4.

The first element of Morgan's excessive force claim is the officers' use of two cans of pepper spray. The second element is Morgan's claim that Sgt. Barnett beat him while he was unconscious. The third element is that Barnett kicked him in the face while Morgan was on the floor and just regaining consciousness. As the Fifth Circuit so cogently stated in *Baldwin v. Stalder*, 137 F. 3d 836 (1998):

> "For starters, it is well to remember that the pertinent Eight Amendment proscription is only against "punishments" that are "cruel and unusual." Accordingly, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992) (emphasis added). On remand to our court in Hudson, we repeated the type considerations listed by the Supreme Court in Hudson, 503 U.S. at 7, that come into play for this "core judicial inquiry." Several factors are relevant in the inquiry whether unnecessary and wanton infliction of pain was used in violation of a prisoner's eighth amendment right to be free from cruel and unusual punishment. These include:
>
> > 1. the extent of the injury suffered;
> >
> > 2. the need for the application of force;
> >
> > 3. the relationship between the need and the amount of force used;
> >
> > 4. the threat reasonably perceived by the responsible officials; and
> >
> > 5. any efforts made to temper the severity of a forceful response.
>
> Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992); see also, Rankin v. Klevenhagen, 5 F.3d 103, 107 (5th Cir. 1993); Valencia v. Wiggins, 981 F.2d 1440, 1446-47 (5th Cir.), cert. denied, 509 U.S. 905, 125 L. Ed. 2d 691, 113 S. Ct. 2998

(1993). Of course, these identified factors are not exclusive; each case must be judged on its own facts. Rankin, 5 F.3d at 107 n.6."

## Use of Pepper Spray

While the use of pepper spray, mace, or other spayed chemical agent is not *per se* a use of unreasonable force,[7] the reasonableness of its use is dependent upon the context in which it is employed.[8]   In respect to the context in which the pepper spray was used in this case, Morgan claims that Barnett used the pepper spray while he (Morgan) hung from the noose and was "semi-conscious,"[9] or "[a]s soon as I started losing consciousness Sgt. Barnett ...assaulted me with chemical agents,"[10] or "losing consciousness,[11] or "used two whole cans on plaintiff as he hung unconscious by his neck from the cell vent,"[12] or "using *peper* (sic) spray on me while I hang suspended in midair with a noose around my neck,"[13] or "completely empty two whole cans of pepper spray on an unconscious, lifeless body suspended in midair by only the noose tied around his neck,"[14]  In addressing his complaints against the actions of Sgt. Die in providing the second

---

[7]     *See Wagner v. Bay City*, 227 F. 3d 316, 324 (5th Cir. 2000) *and Balwin v. Stalder*, 137 F. 3d 836, 840-41 (5th Cir. 1998).

[8]     *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996); *Bradshaw v. Norwood*, 2001 U.S. Dist. LEXIS 20135 (N.D. Tex. 2001) (*Compare Monday v. Oullette*, 118 F. 3d 1099 (6th Cir. 1997) (where the court found that it was reasonable for the officer to use pepper spray to get the offender onto a stretcher and to the hospital for psychiatric evaluation) *and Cabaniss v. City of Riverside*, 231 Fed. Appx. 407, 413 (6th Cir. 2007)(where the use of pepper spray against an arrestee who posed a threat to his own safety and needed to be subdued was objectively reasonable) *with Vinyard v. Wilson*, 311 F. 3d 1340 (11th Cir. 2002)(where the use of pepper spray against an arrestee on a minor offense during a short ride to the jail while he was handcuffed and secured in the back seat of the patrol care was objectively unreasonable).

[9]     Original Complaint, Docket No. 1, p.7.

[10]     *Id*. p.5.

[11]     *Id*. p.10.

[12]     Amended Complaint, Docket No. 80, p.8.

[13]     Rule 7(a) Reply, Docket No. 84, p.2.

[14]     *Id*. p.4.

can of pepper spray, Morgan further alleged, "Sgt.Barnett came to my cell door and Milbern followed with Sgt. Die....Sgt. Die then knocked on the cell door and said: '*I'me* (sic) going to gas your ass, at that time Sgt. Barnett told her (**Die**) to let him handle it...he sprayed me with chemical agents (*peper* spray).'"[15]   In the context of an inmate attempting to hang himself in his locked prison cell (real or feigned) after an order from the officer to "Stop hanging,"[16] the use of pepper spray by an officer outside the locked cell door to secure compliance with that order would not seem to be objectively unreasonable. But the subsequent use of a full or second can might need some explanation, especially in the light of Morgan's claim that he was rendered unconscious by the hanging itself.  Morgan alleges that the pepper spray should not have been used at the time it was, since the object of its usage was no longer to secure compliance but to inflict needless pain.[17]

It is clear that a "use of force" against Morgan was taken by Sgt. Barnett and those who accompanied him to Morgan's cell and thereafter entered the cell to remove him.  Pepper spray was used by the officers incident to that "use of force."  Whether the officers are entitled to qualified immunity from suit arising from that use of force depends, to a great extent, upon those factors set out in *Hudson v. McMillian, supra.*  But at this stage, accepting Morgan's specific factual allegations as true, as the Court must, Morgan's fact specific pleadings do raise substantial contested fact questions as to Morgan's degree of consciousness when, and under what circumstances, the pepper spray was used by Sgt. Barnett.

### Beating Unconscious Man

Morgan's specific allegations as to when and how Barnett "beat" him are ambiguous.  He alternatively alleges the beating happened while he was "unconscious"from the hanging but

---

[15]     Amended Complaint, Docket No. 80, p.7.

[16]     *Id*. p.7.

[17]     Rule 7(a) Reply, Docket No. 84, p.4.

13

elsewhere he alleges he was only "semi-unconscious."  If there was a striking by Barnett, and if such striking occurred while Morgan was unconscious or semi-conscious, and if the striking was not otherwise reasonably necessary to subdue or restrain Morgan either from hanging himself or from violently resisting the officers' reasonable orders, then it is plausible that a claim of excessive force could be sustained against Barnett.

<u>Kick in the Face.</u>

Clearly within the factors set out in *Hudson*,  a kick in the face of a semi-conscious or unconscious, floored inmate causing a bloody nose, split lip and two loose teeth would amount to an objectively unreasonable use of force by a correction officer,  if unexplained by the context in which such force was used.[18]  This is what Morgan factually and specifically alleged Sgt. Barnett did. I further find that Morgan's alleged injuries are not "*de minimus*" but were substantial and significant.  Accordingly, I cannot find that Sgt. Barnett is entitled as a matter of law to qualified immunity from the continuation of this suit.

<u>Bystanders</u>

Morgan clearly, specifically, and factually alleges that Officers Die, Green and Milbern were present at Morgan's cell door with Sgt. Barnett when the pepper spray was used and when Barnett allegedly beat Morgan and kicked him in the face and that they failed to intervene. Similarly, Morgan claims that Officers James, Roy and Johnston were  "present at the time of Sgt. Barnett's attack on my person and did nothing to deter or stop him from *assualting* me..."[19] Federal courts have consistently held that law enforcement officers, supervisory and non-supervisory, who

---

[18]     *See McAllister v. Price*, 615 F. 3d 877 (7th Cir. 2010)(injurious force applied unnecessarily, officer was angry); *Hadley v. Gutierrez*, 526 F. 3d 1324 (11th Cir. 2008)(punch to stomach of unresisting arrestee).

[19]     Amended Complaint, Docket No. 80, p.8.

have a realistic opportunity to prevent a fellow officer from violating a citizen's constitutional rights may be liable for failing to do so.  In *Hale v. Townley*, 45 F.3d 914 (1995) the Fifth Circuit held "that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."[20]

There are significant fact questions as to what Officers Die, Green, Milbern, James, Roy and Johnston observed from the time they were outside Morgan's cell door and when Barnett and others entered Morgan's cell to take loosen his noose from the vent and removed him from the cell. Since Morgan specifically, factually alleges that Officers Milbern, Green,  Die, James, Roy and Johnston  were present at the place and time Sgt. Barnett is alleged to have beaten and kicked Morgan in the face and did nothing to interfere or stop that  use of force,  I cannot find, as a matter of law, that they are entitled to qualified immunity from the continuation of this suit.  There are unresolved factual issues as to *what* occurred *when* in Morgan's cell and *who* saw *what* and could have done *what* about it.

### Other Defendants

I find that Morgan's allegations against LVN Maston concerning her medical care are conclusory only and do not implicate any constitutional violation by her. Morgan's Amended Complaint again names Eddie C. Williams, Warden of the Allred Unit of TDCJ, Nathaniel Quarterman, Director of TDCJ, Candace Tucker, Medical Care worker at the Allred Unit, and Katheryn O'Donnell, another medical worker at the Allred Unit and recites their respective official capacities. But, other than the conclusory allegations that these defendants were "aware" of Plaintiff's being harassed and that they did nothing to stop it, Plaintiff has not alleged any specific facts connecting them to any claimed constitutional violations.  By his Reply, Morgan again seeks to allege claims against Director Nathaniel Quarterman, who previously had been dismissed from

---

[20]     *Id*. at 919; Accord *Deshotels v. Marshall*, 2011 U.S. App. LEXIS 22769 (5th Cir. 2010) .

this suit on qualified immunity grounds. The allegations against Defendant Quarterman are wholly conclusory and do not support a plausible claim against him.  I find that Morgan has failed to allege any other specific facts against Williams, Tucker, and O'Donnell to call into question their prior ordered dismissal.  As to Defendant Anthony Brias,  Morgan alleges no facts as it appears his name was erroneously inserted in lieu of Defendant Johnston.

<u>Recommendations.</u>

I recommend that the District Court deny qualified immunity from suit for Defendants Barnett, Milbern, Die, Green, James, Roy and Johnston at this time, without prejudice to their raising this defense by summary judgment or trial at a later time.

I recommend that the District Court grant the pleas of qualified immunity of Defendants Anthony Brias and  Krissie Maston and dismiss each of them from this suit.  As to Defendants Eddie C. Williams, Nathaniel Quarterman, Candace Tucker, and Katheryn O'Donnell,   I recommend that the District Court confirm their prior dismissal from this suit on the grounds of their qualified immunity.

Pending the passage of time for the timely filing of a notice of interim appeal of the denial of qualified immunity to Defendants Barnett, Milbern, Die, Green, James, Roy and Johnston, I recommend that consideration of the pending referred discovery motions and further discovery in this cause be stayed.

It is so ORDERED this 22day of March, 2012.

Robert K. Roach
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

Standard Instruction to Litigants

A copy of this report containing findings, conclusions and recommendations shall be served on all parties in the manner provided by law.  Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Factual Allegations Against each Defendant[21]

A. Richard Barnett, Jr.

1. <u>Original Complaint</u> (Docket No. 1).
   a. "**Barnett**...sprayed Plaintiff with chemical agents while Plaintiff hang freely from in-side cell vent and semi-concious." p.7.
   b. "As soon as I started losing consciousness **Sgt. Barnett** ..assault me with chemical agent. While *unconcious* someone pulled me from the vent to the floor. I had begun to regain *conciousness* when **Sgt. Barnett** kicked me in the face rendering again *unconcious*."p.10.

2. <u>Amended Complaint</u> (Docket No. 80)
   a.. "**Barnett** then opened the food slot on my cell door and ordered me to "Stop hanging." After this one order he sprayed me with chemical agents (*peper* spray). At this point I would go completely unconscious. As I began to awaken from hard violent blows to my head I looked up from the floor only to see **Sgt. Barnett** kick me in my face and render me unconscious again." p.7.
   b. "**Sgt. Barnett** did not only use one whole can of *peper* spray on the plaintiff, **Barnett** used two whole cans on plaintiff as he hung unconscious by his neck from the cell vent." p.8.
   c. Sgt. Die and Sgt. Barnett would refer to me as a "little girl" do to the covering I made *repeately* out of the little brown paper bags that they put the "open food" in and gave to me...." p. 9.

3. <u>Rule 7(a) Reply</u> (Docket No. 84)
   a. "...[A]s he [Morgan] hang by his neck unconscious and again as he layed unconscious on the cell floor where he was kicked in the face by Defendant **Barnett**..." p.1.
   b. "That while Plaintiff *layed* unconscious Defendant **Barnett** beat him until he awoke then the Defendant kicked Plaintiff in the face rendering him unconscious. p.2.
   c. ..injuries sustained from Defendant **Barnett** beating him while he was lying unconscious on the floor after a suicide attempt..." p.2.
   d. "**Sergeant (Sgt.) Barnett** ...beating me, and using *peper* (Sic) spray on me while I hang suspended in midair with a noose around my neck."p.2.
   e. "...For **Sgt. Barnett** to completely empty two whole cans of pepper spray on an unconscious, lifeless body suspended in midair by only the noose tied around his neck." p.4.

---

[21] These are quotes from the respective pleadings. Punctuation marks and errors are generally ignored but spelling errors have been italicized.

### B. Andrew Green

1. <u>Original Complaint</u>:
   a. "On November 10, 2007, Sgt. Barnett, **Sgt. Green**, and Sgt. Milbern were standing outside my cell door...I then told **Sgt. Green** that if he forced me to remove the signs I would kill myself...as I began to hang myself Sgt. Barnett told me to make sure the rope was tied right ... I did and Sgt.'s Barnett, Milbern and **Green** just stood and watched.  As soon as I started losing consciousness Sgt. Barnett ...assaulted me with chemical agents. While *unconcious* someone pulled me from the vent to the floor.  I had begun to regain *conciousness* when Sgt. Barnett kicked me in the face." p. 5 of 11.

2. <u>Amended Complaint</u>:
   a. "He did...contribute to the violations...by his direct witnessing of the assault which he failed or refused to stop..." p.
   b. They would send **Sergeant Andrew Green** to my cell door to again order me to remove these signs from my cell door window.  He gave the order, I got up and asked him if he understood the signs and what would happen if I was ordered to remove them, he did and to "Get this our your window." I then walked back to my *bounk* and got my noose...and as I *begain tieing* it up Sgt. **Green** told Sgt.'s Milbern, Barnett and Die, along with Capt. James that I was hanging my noose..." p. 7.

3. <u>Rule 7(a)  Reply</u>:
   a. "Defendant Barnett "Beat" him until he awoke the then Defendant "Kicked" Plaintiff in the "Face" rendering him "again unconscious."... Plaintiff sues Defendants James, **Green**, Milbern, Die, Roy and Johnston for allowing the above acts."  p.2
   **b.** **Sgt. Green** was the first to approach my cell door and read the signs in my cell window, he ordered me to remove them, said that he did understand them and without saying one word to me watched as I tried to hang myself. After Sgt. Barnett relieved him, **Sgt. Green** then watched as I was mocked, harassed, pepper *spraied* and beaten,, without even an attempt to stop him or get me medical attention..." p. 13

### C. Eric Milbern

1. <u>Original Complaint</u>:
   a. On November 10, 2007, Sgt. Barnett, Sgt. Green, and **Sgt. Milbern** were standing outside my cell door...I then told Sgt. Green that if he forced me to remove the signs I would kill myself...as I began to hang myself Sgt. Barnett told me to make sure the rope was tied right ... I did and Sgt.'s Barnett, **Milbern** and Green just stood and watched.  As soon as I started losing consciousness Sgt. Barnett ...assaulted me with chemical agents. While *unconcious* someone pulled

me from the vent to the floor.  I had begun to regain *conciousness* when Sgt. Barnett kicked me in the face." p. 5 of 11.

2. <u>Amended Complaint</u>:

    a.     "...**Defendant Milbern**...He did...contribute to the violations..by his direct witnessing of "the assault" which he failed or refused to stop.." p. 4.

    b.     "..and as I *begain tieing* it up Sgt. Green told Sgt.'s **Milbern**, Barnett and Die, along with Capt. James that I was hanging my noose. Sgt. Barnett came to my cell door and **Milber**n followed with Sgt. Die, Sgt.Die then knocked on the cell door.. then he looked back at me while Sgt. **Milbern** held the door. ..Barnett then opened the food slot on my cell door and ordered me to "Stop hanging", after this one order he sprayed me with chemical agents (*peper* spray)... As I began to awaken from "Hard *Violente* Blows" to my head I looked up from the floor only to see Sgt. Barnett kick me in my face and render me unconscious once again." p. 7

3. <u>Rule 7(a)  Reply</u>:

    a.     "Defendant Barnett "Beat" him until he awoke the then Defendant "Kicked" Plaintiff in the "Face" rendering him "again unconscious."... Plaintiff sues Defendants James, Green, **Milbern**, Die, Roy and Johnston for allowing the above acts."  p.2

    b.     Sgt. **Milbern** watched from nearby as Sgt. Barnett began his assault on me by using Pepper Spray, (two cans) then after opening the cell door, stood by as Sgt. Barnett Beat and kicked me in my face, while he (**Sgt., Milbern** did noting to *perven* or stop him (Sgt. Barnett) from *assulting* me. **Sgt. Milbern** then proceeded to falsify documents (See Use of Force Report) in an attempt to "cover-up" the guard brutality."  p.13.

### D. Lisa James

1. <u>Original Complaint</u>:

    a.     (Captain James was not named)

2. <u>Amended Complaint</u>:

    a.     "Lisa James.....She did ....violate...by "directly knowing and witnessing Defendant Barnett beat Plaintiff...by her presents at the exact time of Plaintiff's beating and without interference to this beating." p.2.

    b.     "As long as these signs hang—I *Dont*". Upon reading this they left and talked with each other, and **Capt. Lisa James** moments later they would send Sergeant, Andrew Green to my cell door to again order me to remove these signs from my cell door window." p.6-7.

    c.     "..and as I *begain tieing* it up Sgt. Green told Sgt.'s Milbern, Barnett and Die, along with **Capt. James** that I was hanging my noose. Sgt. Barnett came to my cell door and Milbern followed with Sgt. Die, Sgt.Die then knocked on the cell door.. then he looked back at me while Sgt. Milbern held the door. ..Barnett then opened the food slot on my cell door and ordered me to "Stop hanging", after this one order he sprayed me with chemical agents (*peper* spray)... As I began to awaken from "Hard *Violente* Blows" to my head I looked up from the floor only to see Sgt. Barnett kick me in my face and render me unconscious once again." p. 7.

3.    Rule 7(a)  Reply

    a.    Plaintiff sues Defendants **James**, Green, Milbern, Die, Roy and Johnston for allowing the above acts."  p.2

    b.    "She did violate...by directly knowing and witnessing Defendant Barnett beat Plaintiff...and without interference to this beating"...And by her presents at the exact time of Plaintiff's beating, and without interference to this beating ...to stop any illegal acts of violence...  p.2.

    c.    " ...**Captain James** did nothing to prevent nor stop the attack she was watching *occure*, behaving with deliberate indifference by not preventing or *stoping* the harassment from Sgt. Barnett as he encouraged and instructed me to, and how to commit suicide; for allowing the use of "chemical agents-pepper spray– to...be used on me for the mere purpose of causing me pain..." p.5.

    d.    **Capt, James** was well aware of her responsibilities... but acted instead ...by allowing Sgt. Barnett to physically beat me after using two cans of pepper spray on me while I hung by a noose (only).... Therefore **Capt James's** refusal to manage the people under her control..." p.11.

E. Caryn Die.

1.    Original Complaint:

    a.    "...refusing to state on the record of video camera that excessive force had been used on plaintiff and attempting a cover-up.." p. 4 of 11.

    b.    "The next time I regained consciousness, **Sgt. Die** was standing over me ordering more pictures to be taken of my "face only."  **Sgt. Die** then yelled, "Where is my video camera and where is medical." **Die** asked one of the officers if I was breathing and if I could breathe, because of how hard I was breathing, trying to get air through the chemical agents..."...the officer forced his fingers between the noose and my neck...then he asked **Sgt. Die** if he should loosen it or take it off." p.6 of 11.

    c.    "**Sgt. Die** told L.V.N. Maston to document the blood on my face coming from my nose."

    d.    "on the way to 10-building medical **Sgt. Die** gave the common "Use of Force-Speech" ..did state on video camera "that force was used to regain *complyance*." p. 6of 11.

2.    Amended Complaint:

    a.    "**Defendant Die** was during this time a staff supervisor (Sgt.) and did rather than stop defendant Barnett ..., did aid him directly by giving him her own can of "Top C.O.P. chemical agents which Barnett did maliciously use on Plaintiff after Barnett had already used his own." p. 3.

    b.    On November 10, 2007 and on the morning thereof, Sergeant's Richard Barnett, Jr., Eric Milbern and **Karen Die** did...approach my cell door and read the new sign..."As long as these signs hang—I *Dont*."...Sgt.Barnett came to my cell door and Milbern followed with **Sgt. Die**.  **Sgt. Die** then knocked on the cell door and said:"*I'me* going to gas your ass," at that time Sgt. Barnett told her (**Die**) to let him handle it...he sprayed me with chemical agents (*peper* spray).

    c.    " the next time I awoke I was being photographed....but as I layed there I could hear a females voice ordering someone to take more pictures of my face after this

21

this male was ordered to wipe the blood off my face before the video camera arrived."

   d.    "At this point L.V.N. Maston would *begain* her examination...L.V.N said questionably "You want me to sight the blood?" the other female voice again said "Yes, sight the blood. I've already taken pictures of it." p. 7-8.

   e.    "...Barnett used two whole cans on plaintiff as he hung unconscious by his neck from the cell vent. And that **Sgt. Die** was the person which Sgt. Barnett did *recieve* the second can of *peper* spray from." p. 8.

   f.    "I was told by **Sgt. Die** that if I had wanted to wear cloth, I would never have *tryed* to kill myself... **Sgts Die** and Barnett would refer to me as a "little girl." p. 9.

3.    Rule 7(a) Reply:

   a.    "Plaintiff sues Defendants James, Green, Milbern, **Die**, Roy and Johnston for allowing the above acts." p.2.

   b.    "**Sergeant Die** ...by ignoring my needs for safety/medical care..." p. 7.

   c.    On the day of the incident, **Sgt. Die** not only gave to Sgt. Barnett and extra can of pepper spray..." **Sgt. Die's** refusal to stoop Sgt. *Barnetts* aggravated *assualt* on me, as well as her attempt to help 'cover-up' the same..." p. 12.


F. L.V.N. Krissie Maston


1.    Original Complaint:

   a.    "L.V.N. **Krissie Maston** did...refus[ing} to correctly identify all my injuries and document them... so I could receive proper treatment.  L.V.N. **Maston** refused to report my having a "black right eye, busted nose and lip with two loose front teeth. Sgt. Die told L.V.N. **Maston** to document the "blood" on my face coming from my nose." p. 6 of 11.

   b.    "I was placed in a "strip cell-16" on "suicide watch/observation." p. 6 of 11.

   c.    "At no time was I allowed to decontaminate properly and received no treatment for my injuries...nor did I receive any kind of covering while in Strip Cell-16....I was not allowed a "paper gown or suicide blanket due to L.V.N. **Maston's** orders from November 10...to the night of November 12, 2007." p.6 of 11.

2.    Amended Complaint:

   a.    "Defendant **Maston**...did contribute to the violations...by her direct refusal to treat and **document plaintiff's injuries..." p.5.**

   **b.**    **"Krissie** Maston was one of the nurses who *delievered* daily *medicen* to inmates...She did also read these signs herself without questioning me at any time." p. 6.

   c.    "At this point L.V.N. **Maston** would begin her examination, and in an attempt to follow an "order of customs" she then said (on camera) there is no blood sighted, Pt., has, then she was cut short and ordered by a female voice to sight the blood. **L.V.N.** said questionably "You want me to sight the blood? "the other female voice again said "Yes, sight the blood I've already taken pictures of it." pp. 7-8.

   d.    "L.V.N. **Maston** did later falsify medical reports to "help cover-up" all the above." p. 8.

3.    Rule 7(a) Reply:

   a.    "L.V.N. **Maston's** failure....to document my injuries and her attempt to "cover-

up" ...her allowance to force me to endure extreme cold temperature, while naked  for a period of three days and two nights..." p.9.

b.    "L.V.N. **Maston** was the nurse on call on the date November 10, 2007.  She gave her examination of me, which she ...*tryed* to *lieve* out the "blood" on my face, but was forced to record it by an unknown female voice of authority in the room during that time." pp.11-12.

## G. Anthony Brias

1.    <u>Original Complaint</u>:  **Anthony Brias** was not named.
2.    <u>Amended Complaint</u>: **Anthony Brias'** name was originally entered as Defendant #9 in the final paragraph on page 4, but his name was stricken and the name, Marion Johnston, was inserted. **Anthony Brias**  was not otherwise mentioned.
3.    <u>Rule 7(a) Reply</u>: **Anthony Brias** was not named.

## H. Marion Johnston

1.    <u>Original Complaint</u>:  (**Marion Johnston** was not named.)
2.    <u>Amended Complaint</u>:
    a.    "**Marion Johnston**...did...contribute to the violations...by his direct witnessing of "the *assualt*" which he failed or refused to stop." p. 4.
    b.    C.O. Justin Roy and C.O. **Marion Johnston** were both present at the time of Sgt. Barnett's attack on my person and did nothing to deter or stop him from *assualting* me...and **both C.O.'s**...participated ..in a *conpiracy* to "cover-up" all of the above by falsifying legal documents and *vedio*/audio recording ." p. 8.
3.    <u>Rule 7(a) Reply</u>:
    a.    "Plaintiff sues Defendants James, Green, Milbern, Die, Roy and **Johnston** for allowing the above acts."  p.2.
    b.    "C.O. **Marion Johnston**....His allowance of/or failure to intervene, interrupt or stop Sgt. Barnett aggravated *assualt* being at-the-time committed in front of him..." p. 9.
    c.    "...**C.O.4 Johnston** saw Sgt. Barnett *assualting* me yet did nothing to stop him." p. 14.

## H. Justin Roy.

1.    <u>Original Complaint</u>: (**Justin Roy** was not named.)
2.    <u>Amended Complaint</u>:
    a.    "**Justin Roy**....did contribute to the violations...by his direct witnessing of "the *assualt*" which he failed or refused to stop..." p. 4.
    b.    **both C.O.'s**...participated ..in a *conpiracy* to "cover-up" all of the above by falsifying legal documents and *vedio*/audio recording ." p. 8.
3.    <u>Rule 7(a) Reply</u>:
    a.    "Plaintiff sues Defendants James, Green, Milbern, Die, **Roy** and Johnston for allowing the above acts."  p.2.
    b.    "C.O.3. Roy saw Sgt. Barnett a*ssualting* me yet did noting to stop him...." p.14.